**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

PAULINA POREMBSKA,                                              Case No.: 21-cv-5836

                       Plaintiff,

                                         **COMPLAINT**

      -against-

ONE STEP UP LTD.,                                              Plaintiff Demands
                                         a Trial by Jury

                       Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## PRELIMINARY STATEMENT

Plaintiff PAULINA POREMBSKA complains pursuant to Title VII of the Civil Rights

Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII"), the Americans with Disabilities Act of

1990 ("ADA") as amended, the Family Medical Leave Act, 28 U.S.C. § 1331 ("FMLA") as

amended, New York State law, and New York City law, and seeks damages to redress the

injuries Plaintiff suffered as a result of, *inter alia,* sex/gender discrimination, disability

discrimination, retaliation, and a hostile work environment.

## JURISDICTION & VENUE

1. This Court has federal question jurisdiction over Plaintiff's Title VII, ADA, and FMLA claims

    pursuant to 28 U.S.C. § 1331.

2. This Court has supplemental jurisdiction over the related New York State and City law causes

    of action asserted in this complaint pursuant to 28 U.S.C. § 1367.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391 (b) because the events or

omissions which gave rise to the claims asserted herein occurred within this Court's
jurisdiction.

4. Plaintiff has fully complied with all administrative prerequisites for the commencement of this
   action.

## PARTIES

5. At all times material, Plaintiff PAULINA POREMBSKA (hereinafter referred to as "Plaintiff"
   or "POREMBSKA") was and is an individual female residing in the State of New Jersey,
   County of Middlesex.

6. At all times material, ONE STEP UP LTD., is a domestic business corporation duly existing by
   the virtue and laws of the State of New York, doing business at 1412 Broadway, 3rd Floor, New
   York, New York 10018.

7. At all times material, ABRAHAM SULTAN (hereinafter referred to as "SULTAN") was and is
   an individual male employed by Defendant.

8. At all times material, SULTAN was Plaintiff's supervisor.

9. At all times material, SHERLINE AYUSO (hereinafter referred to as "AYUSO") was and is an
   individual female employed as Defendant's Head of Human Resources

## MATERIAL FACTS

10. In or around June of 2014, Defendant hired Plaintiff as an Assistant Designer.

11. In our around early 2016, Defendant promoted Plaintiff to a higher position.

12. In or around July of 2020, upon returning to work from a COVID-19 related furlough, Plaintiff
    saw that Defendant was not following CDC guidelines: Plaintiff's fellow employees were not
    all wearing masks, hand sanitizer and soap dispensers were not refilled, Defendant did not
    provide employees with masks, the reception desk was not protected with plexiglass, and

Plaintiff was not notified when her colleagues were exposed to or tested positive for COVID-19.

13. In or around July of 2020, Defendant rented an office space in New Jersey. Due to Defendant's blatant disregard of COVID-19 regulations, Plaintiff requested to either work from home or from the New Jersey office to avoid public transportation and possible exposure to COVID-19.

14. Plaintiff's Supervisor SULTAN denied Plaintiff's request despite offering such privileges to Plaintiff's male colleagues including EDDIE SITT, ISAAC KBABIEH, and SULTAN himself.

15. In or around the same time, Defendant denied similar requests to work from home of other female employees including SELENA EVANS, SHASIA MUNOZ, and others.

16. At all times material, Defendant routinely treated women less favorably than men in that, among other disparate acts: (i) when male colleagues did come into the New Jersey office, male colleagues would expense rental cars, tolls, and parking to Defendant. Women employees were never given such benefits; (ii) Defendant's Supervisor SULTAN would routinely order lunch for the men in the office every day but would not order lunch for the women; (iii) Defendant routinely allowed men to take days off of work without having to use personal days or sick time whereas the women in the office routinely had to use personal days and sick days.

17. On or about September 25, 2020, Plaintiff was violently struck by a motor vehicle while crossing a street during work hours. The accident resulted in four herniated discs in her neck and two herniated discs in her lower back.

18. In or around October of 2020, Plaintiff began physical therapy and pain management treatment.

19. On or about October 12, 2020, Plaintiff's medical providers recommended Plaintiff take a leave of disability from October 12, 2020 to December 12, 2020.

20. Upon advising Plaintiff's Supervisor SULTAN of her disability and request for medical leave, SULTAN told Plaintiff that **he cannot afford for her to take leave**. SULTAN then offered her the opportunity to work from home, which he had previously denied.

21. In or around October of 2020, Plaintiff began working from home, as instructed by SULTAN. While working from home, Defendant failed to pay Plaintiff for money earned and continuously overlooked paying Plaintiff for her overtime.

22. In or around December of 2020, Defendant's Head of Human Resources AYUSO pressured Plaintiff to return to in-person work, stating that Plaintiff's ability to work from home was never approved "for this long." Despite AYUSO's comment, SULTAN instructed Plaintiff to continue working from home. SULTAN gave Plaintiff strict deadlines, and her workday often extended past 11:00 P.M, with no overtime pay.

23. In or around February of 2021, Plaintiff was advised by both her chiropractor and pain management doctors that they would take a more aggressive treatment approach, including several spine injection procedures. As such, Plaintiff's medical providers recommended Plaintiff take disability leave from February 15, 2021 to March 15, 2021.

24. Thereafter, Plaintiff requested to take disability leave for one month.

25. Thereafter, on or about February 15, 2021, Plaintiff's Supervisor SULTAN sent Plaintiff a text message in which he refused to allow Plaintiff to take disability leave and instead instructed her to continue to work from home. SULTAN told Plaintiff "It's very difficult here without you." Plaintiff, stressing the severity of her injury, offered to send SULTAN her medical records. SULTAN indicated he had already seen them.

26. On or about February 16, 2021, despite SULTAN's discouragement, Defendant's HR informed Plaintiff that her disability leave began on February 15, 2021 and would run for one month.

27. On or about February 23, 2021, despite Plaintiff being out on disability leave, SULTAN text messaged Plaintiff four times and called her three times between the hours of 1 PM to 10 PM. SULTAN urgently demanded that Plaintiff FedEx samples to him. As Plaintiff was out on disability and recovering from a procedure, she was unable to immediately respond to his communication.

28. On or about February 23, 2021, Plaintiff responded to SULTAN and agreed to help while emphasizing her disability and explaining that she will not be available to answer all of his attempts at communication while on disability. As promised, Plaintiff contacted FedEx and requested a shipping label for the requested samples.

29. On or about March 2, 2021, SULTAN again text messaged Plaintiff and demanded that she forward certain spreadsheets. SULTAN made this demand despite having access to said spreadsheets in his email.

30. On or about March 5, 2021, Plaintiff's disability leave was extended from March 15, 2021, to April 15, 2021.

31. On or about March 11, 2021, Plaintiff advised SULTAN that she had two more medical procedures to undergo and that her disability was extended for another thirty days. However, understanding how busy Defendant was, Plaintiff offered to work from home for her last month of disability prior to her in-person return to the office.

32. On or about April 13, 2021, Plaintiff emailed SULTAN and AYUSO to advise them of her return to in-person employment on April 19, 2021.

33. On or about April 15, 2021, SULTAN again text messaged Plaintiff with another work

assignment during her disability leave.

34. On or about April 19, 2021, Plaintiff returned to in-person work to find her office space disheveled. Plaintiff's clothing samples and paperwork were thrown around, misplaced, and missing entirely. Plaintiff opened her desk drawer to find that work files, as well as some of her personal items including two USB drives, a check book, paystubs, her office holiday present, and paperwork, were missing. Plaintiff's computer, keyboard, and mouse were unplugged, and her office supplies were all missing. Plaintiff was advised by SELENA EVANS that SULTAN was moving Plaintiff from her workplace to make room for Defendant's new employee CHRISTINE RAMSEY, who was hired two weeks prior to Plaintiff's return to take over her position.

35. At all times material, Defendant hired RAMSEY to replace Plaintiff.

36. Thereafter, Plaintiff reached out to Defendant's Human Resources Manager AYUSO to report her missing items and disheveled office. AYUSO then reached out to SULTAN who denied ever being in Plaintiff's office space and/or touching any of her belongings. In response to SULTAN's denial, AYUSO yelled at Plaintiff to **never come into her office again** and to handle issues directly with SULTAN. AYUSO began to reprimand Plaintiff stating, among other things, that Plaintiff should not have left personal items in her desk if she was going to take disability leave.

37. That afternoon Plaintiff approached SULTAN to discuss her missing personal items. SULTAN admitted removing items from Plaintiff's office.

38. In the same conversation, SULTAN informed Plaintiff that EVANS would be promoted to Senior Designer over her. Plaintiff was hurt, as she had been SULTAN's longest serving employee and was the one who actually trained EVANS.

39. At all times material, Defendant promoted EVANS over Plaintiff because Plaintiff took disability leave and/or suffered from a disability.

40. On or about April 21, 2021, Plaintiff was called into SULTAN's office for a meeting. During the meeting, SULTAN advised Plaintiff that her position would be shifting to men's clothing design. Plaintiff was shocked and confused by the abrupt and sudden change.

41. On or about April 22, 2021, Defendant sent Plaintiff a calendar invitation for a deep clean of Defendant's showroom, despite Plaintiff's heavy lifting limitations.

42. On or about April 23, 2021, AYUSO called Plaintiff into her office to meet with SULTAN. Within, she asked Plaintiff if she was finished with physical therapy. Plaintiff responded that she was not. In response, SULTAN immediately told Plaintiff that "**it's time to part ways**."

43. Defendant terminated Plaintiff for taking protected disability leave and/or for having a disability.

44. As a result of Defendant's actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

45. As a result of Defendant's discriminatory and intolerable treatment, Plaintiff suffered and continues to suffer severe emotional distress and physical ailments.

46. As a result of Defendant's unlawful and discriminatory actions, Plaintiff has endured unwarranted financial hardships and irreparable damage to her professional reputation.

47. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation, which such employment entails. Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff further claims aggravation, activation, and/or exacerbation of any

preexisting condition.

48. As Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages against Defendant.

49. The above are just some of the examples of unlawful, discriminatory, and retaliatory conduct to which Defendant subjected Plaintiff.

## AS A FIRST CAUSE OF ACTION
## DISCRIMINATION UNDER TITLE VII

50. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

51. Title VII states in relevant part as follows:

"(a) Employer practices:

It shall be an unlawful employment practice for an employer:

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."

52. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended, for relief based upon the unlawful employment practices of the above named Defendant. Plaintiff complains of Defendant's violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's gender or disability.

53.  Defendant engaged in unlawful employment practices prohibited by 42 U.S.C. 2000e et seq., by terminating and otherwise discriminating against Plaintiff as set forth herein because of Plaintiff's gender.

## AS A SECOND CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## THE AMERICANS WITH DISABILITIES ACT

54. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

55. Plaintiff claims Defendant violated Title I of the Americans with Disabilities Act of 1990 (Pub. L. 101-336) (ADA), as amended, as these titles appear in volume 42 of the United States Code, beginning at section 12101.

56. SEC. 12112. [Section 102] specifically states "(a) General Rule. - No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

57. Section 102 continues: "As used in subsection (a) of this section, the term 'discriminate against a qualified individual on the basis of disability' includes … (4) excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association."

58. Defendant violated the section cited herein by creating and maintaining discriminatory working conditions, and otherwise discriminating and retaliating against the Plaintiff because of Plaintiff's known disability.

59. Defendant violated the above and Plaintiff suffered numerous damages as a result.

## AS A THIRD CAUSE OF ACTION
## FOR VIOLATIONS OF THE
## FAMILY AND MEDICAL LEAVE ACT - 29 U.S.C. § 2601 ET SEQ.

60. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this

complaint.

61. Section 2612 of the Family Medical Leave Act (FMLA) states in pertinent part:

"(a) In general

(1) Entitlement to leave

Subject to section 2613 of this title, an eligible employee shall be entitled to a total of 12

workweeks of leave during any 12-month period for one or more of the following: […]

(D) Because of a serious health condition that makes the employee unable to perform the

functions of the position of such employee."

62. Defendant violated the above and Plaintiff suffered numerous damages as a result of

Defendant failing to provide entitled leave to Plaintiff

## AS A FOURTH CAUSE OF ACTION
## FOR RETALIATION AND INTERFERENCE UNDER THE
## FAMILY AND MEDICAL LEAVE ACT - 29 U.S.C. § 2601 ET SEQ.

63. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this

complaint as if the same were set forth herein fully at length.

64. Section 2615 of the FMLA states as follows:

Prohibited acts

(a) Interference with rights

(1) Exercise of rights

It shall be unlawful for any employer to interfere with, restrain, or deny the exercise
of or the attempt to exercise, any right provided under this subchapter.

(2) Discrimination

It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

65. Defendant unlawfully interfered, restrained, and denied Plaintiff's right to exercise and attempt to exercise Plaintiff's rights under the above section and discriminated and retaliated against Plaintiff for opposing Defendant's unlawful employment practice and attempting to exercise Plaintiff's rights.

66. Defendant violated the above and Plaintiff suffered numerous damages as a result.

### AS A FIFTH CAUSE OF
### ACTION UNDER STATE LAW
### <u>DISCRIMINATION</u>

67. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if set forth herein more fully at length.

68. New York State Executive Law § 296 provides that: "1. It shall be an unlawful discriminatory practice: "(a) For an employer or licensing agency, because of the age, race, creed, color, national origin, sex, or disability, or marital status of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

69. Defendant violated the section cited herein by discharging, creating and maintaining discriminatory working conditions, and otherwise discriminating against the Plaintiff because of Plaintiff's sex and disability.

70. Defendant violated the section cited herein as set forth.

## AS A SIXTH CAUSE OF
## ACTION UNDER STATE LAW
## AIDING & ABETTING

71. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this

complaint.

72. New York State Executive Law §296(6) provides that it shall be an unlawful discriminatory

practice: "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden

under this article, or attempt to do so."

73. Defendant participated in, aided, abetted, and encouraged Defendant's employee to

unlawfully harass and retaliate against Plaintiff.

74. Defendant violated the section cited herein as set forth.

## AS A SEVENTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## THE NEW YORK CITY ADMINISTRATIVE CODE

75. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this

Complaint as if set forth herein more fully at length.

76. The Administrative Code of the City of New York § 8-107 [1] provides that "It shall be an

unlawful discriminatory practice: (a) For an employer or an employee or agent thereof,

because of the actual or perceived age, race, creed, color, national origin, gender, disability,

marital status, sexual orientation or alienage or citizenship status of any person, to refuse to

hire or employ or to bar or to discharge from employment such person or to discriminate

against such person in compensation or in terms, conditions or privileges of employment."

77. Defendant engaged in an unlawful discriminatory practice and violated the section cited herein

by discharging, creating and maintaining discriminatory working conditions, and otherwise

discriminating against Plaintiff because of her gender and disability, together with

harassment and causing a hostile work environment based on same.

78. Plaintiff hereby makes a claim against Defendant under all of the applicable paragraphs of

the New York City Administrative Code Title 8.

79. Defendant violated the above and Plaintiff suffered numerous damages as a result.

## AS AN EIGHTH CAUSE OF ACTION
## FOR AIDING & ABETTING UNDER
## THE NEW YORK CITY ADMINISTRATIVE CODE

80. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this

Complaint as if set forth herein more fully at length.

81. The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful

discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of

any of the acts forbidden under this chapter, or attempt to do so."

82. Defendant engaged in an unlawful discriminatory practice in violation of New York City

Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling and coercing

the above discriminatory, unlawful and retaliatory conduct.

83. Defendant violated the above and Plaintiff suffered numerous damages as a result.

## AS A NINTH CAUSE OF ACTION
## FOR INTERFERENCE WITH A PROTECTED RIGHT UNDER
## THE NEW YORK CITY ADMINISTRATIVE CODE

84. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this

Complaint as if set forth herein more fully at length.

85. New York City Administrative Code Title 8-107(19) provides that: "It shall be an unlawful

discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or

attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment

of, or on account of his or her having aided or encouraged any other person in the exercise or

enjoyment of, any right granted or protected pursuant to this section."

86. Defendant violated the above and Plaintiff suffered numerous damages as a result.

## AS A TENTH CAUSE OF ACTION
## FOR SUPERVISOR LIABILITY UNDER
## THE NEW YORK CITY ADMINISTRATIVE CODE

87. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if set forth herein more fully at length.

88. New York City Administrative Code Title 8-107(13)(b) provides that: "An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where; (i) the employee or agent exercised managerial or supervisory responsibility; (ii) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or (iii) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct."

89. Defendant violated the above and Plaintiff suffered numerous damages as a result.

## JURY DEMAND

Plaintiff demands a trial by jury as to all issues so triable.

Date:   July 7, 2021
        New York, New York

                                    Very truly yours,

                                    **DEREK SMITH LAW GROUP, PLLC**


                        By:    */s/ Alexander G. Cabeceiras*
                               Alexander G. Cabeceiras, Esq.
                               One Penn Plaza, Suite 4905
                               New York, NY 10119